VILLANTI, Judge.
H.P., the mother of J.A. and A.A., challenges an order terminating her parental rights as to these two children. The sole issue on appeal is whether the circuit court’s order terminating H.P.’s parental rights, when the children remain in an indefinite state of dependency while their father works towards reunification with them, is the least restrictive means to ensuring the children’s safety. We determine that it is not and therefore reverse.
H.P. was arrested and jailed for a drug offense in 2001. Her husband, J.P., who is also the children’s father, was already serving time on a drug charge, and consequently the children were left with no one to care for them. H.P.’s efforts to have a relative care for the children were unsuccessful, and the children were sheltered and adjudicated dependent as to both parents. H.P. was assigned a case plan but failed to comply with its terms while in jail; after she was released from jail, she left Florida for fear of deportation to Mexico. Consequently, the Department of Children and Family Services (the Department), filed a petition to terminate H.P.’s parental rights. The circuit court found that H.P. had failed to complete the tasks in her case plan — a finding H.P. does not dispute — and concluded that H.P. had abandoned her children. Additionally, using the criteria in section 39.810, Florida Statutes (2003), the circuit court found termination was in the manifest best interest of the children.[1]
A significant factor in the circuit court’s manifest best interest determination was H.P.’s departure from Florida and the father, J.P’s, imprisonment. At the time H.P.’s rights were terminated, J.P. remained imprisoned subject to an indefinite INS hold, which carried the possibility of deportation to Cuba. Because of J.P’s Cuban nationality, however, deportation was uncertain. The Department petitioned to have J.P.’s rights terminated, but because of the uncertainty of J.P.’s deportation, the circuit court decided to hold off on terminating his parental rights until the next judicial review, six months later. During the pendency of this appeal, J.P.’s INS hold was lifted, J.P. was released from prison, the petition for termination of parental rights against him was dismissed, and J.P. was assigned a case plan with the goal of reunification. As we write, the children remain dependent and are living in shelter care, J.P. is working on a plan for reunification, and H.P.’s rights to her children have been terminated. It is with *962 in this context that we consider the order terminating H.P.’s parental rights.
In recognition of a parent’s fundamental liberty interest in raising his or her child, the supreme court has determined that before a parent’s rights will be forever terminated, the Department must do more than establish the statutory grounds for termination. Padgett v. Dep’t of Health & Rehab. Servs., 577 So.2d 565, 571 (Fla.1991). The court must also perform a constitutional analysis, with the burden on the Department to show that termination is the least restrictive means for protecting the child from harm. Id.; K.A. v. Dep’t of Children & Family Servs. (In re K.A.), 880 So.2d 705, 709 (Fla. 2d DCA 2004) (“Before parental rights to a child can be permanently and involuntarily severed, there must be clear and convincing evidence that termination is the least restrictive means to protect the child; in other words, that reunification with the parent poses a substantial risk of significant harm to the child.”).
H.P. submits that the Department has failed to show that termination is the least restrictive means available to protect the children. The First District considered a situation similar to this one in L.B. v. Department of Children & Families, 835 So.2d 1189 (Fla. 1st DCA 2002). In that case, despite recognizing that the State had established the statutory criteria for termination, the First District nevertheless determined that termination was not the least restrictive means for protecting the children. The First District focused on the fact that because the father’s termination petition had been dismissed, the children remained in a status of dependency; thus the only effect of terminating the mother’s rights was to insure that the children had no contact with her:
In the instant case, while the trial court terminated appellant’s parental rights, the trial court dismissed the termination petition as to the father. Therefore, the children, who are still legally dependent, will not be placed for adoption as the father continues to focus on his case plan. Thus, the termination order’s sole effect upon the children, who remain in shelter custody, was to sever their contact with appellant.
Id. at 1196. Because the least-restrictive-means test requires measures short of termination be used if doing so presents no threat of harm to the child, and because there was no showing that the mother’s supervised visitation of the children would harm them, the First District found that termination did not pass constitutional muster.
The same can be said in this case. We note that termination would be the least restrictive means if the children were awaiting adoption, but that is not the situation here. The only effect termination has is to completely sever any rights H.P. has to her children — it does not bring the children any closer to being adopted. While J.P. continues to work on his case plan with the goal of reunification, the children remain dependent. Meanwhile, H.P.’s rights have been completely severed, even though there has been no showing that supervised contact with the children would harm them in any way. Significantly, J.P. intends to reunite with H.P.
We hold that termination was not the least restrictive means of protecting the children from harm. In so doing, we emphasize that the constitutional protections afforded a parent are so important that a court cannot overlook them in attempting to satisfy the child’s manifest best interests pursuant to section 39.810. The Department contends that the least-restrictive-means test comprises two considerations: (1) whether the statutory criteria for termination have been met and (2) whether termination is in the child’s *963 manifest best interest. But these two requirements must be met under the express provisions of the statutory scheme. The least-restrictive-means test articulated in Padgett, 577 So.2d at 571, is a constitutional requirement that goes beyond the requirements set forth in the statute. The Department’s argument fails because it does not recognize the independent significance of the constitutional requirement set forth in Padgett.
We therefore reverse the order terminating HJP.’s parental rights as to J.A. and A.A. and remand for further proceedings.
Reversed and remanded.
NORTHCUTT and CANADY, JJ, concur.

. The circuit court inadvertently cited section 39.806 as its basis for performing its manifest best interest analysis, but it is clear the court appropriately used the criteria found in section 39.810. A more troubling procedural irregularity is the fact that the court proceeded under the wrong statute in terminating H.P.’s rights. It cited section 39.806 as the statutory basis for termination. However, section 39.811 provides the only circumstances under which one parent's rights may be terminated when the rights of another parent remain intact. See also L.N. v. Dep’t of Children & Family Servs. (In re E.D.), 884 So.2d 291 (Fla. 2d DCA 2004). We note that the uncertainty of the resolution of the father's case probably contributed to this error. Nonetheless, it appears that none of the grounds for termination in section 39.811 would apply to H.P. But because H.P. has not advanced any argument regarding the applicability of section 39.811, we decline to find error in proceeding under this section. Such a determination is unnecessary because, regardless of the statutory basis for termination, termination was not the least restrictive means for protecting the children and thus any termination violated H.P.’s constitutional right to her children.